# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Regina Bowman,                    )
                                  )
          Plaintiff,              )  Case No. 1:07-CV-933
                                  )
     vs.                          )
                                  )
Michael J. Astrue,                )
Commissioner of Social            )
Security,                         )
                                  )
          Defendant.              )

<u>O R D E R</u>

This matter is before the Court on Magistrate Judge Black's Report and Recommendation of February 27, 2009 (Doc. No. 11) and the Commissioner of Social Security's objections to the Report and Recommendation (Doc. No. 12). For the reasons that follow, the Commissioner's objections to the Report and Recommendation are well-taken and are **SUSTAINED**. The Court does not adopt the Report and Recommendation. The Court concludes that the Administrative Law Judge's determination that Plaintiff is not disabled was supported by substantial evidence. Accordingly, the ALJ's determination that Plaintiff is not disabled is **AFFIRMED.**

## I. <u>Background</u>

On July 24, 2003, Plaintiff Regina Bowman filed a claim for Disability Insurance Benefits and Supplemental Security Income alleging December 28, 2001 as the date of onset of disability. Plaintiff originally claimed disability based on

seizure disorder and renal failure; however, as the case progressed the only issue became whether Plaintiff is disabled because of osteoarthritis and associated pain in her knees. <u>See</u> Tr. 17 (stating that "counsel contends the claimant is unable to work due to her arthritic knees.").

Plaintiff was age 55 at the alleged onset date of disability and thus was of "advanced age" under the Social Security Regulations. Plaintiff graduated from high school and her past relevant work was as a housekeeper in both a hotel and in private residences. The ALJ noted that Plaintiff's work as a housekeeper was at the light level of exertion whereas her work as a private housekeeper is typically performed at the medium level of exertion. Tr. 17. Both housekeeping positions are unskilled.

Although the administrative record is voluminous, resolution of Plaintiff's disability claim essentially boils down to two pieces of evidence.

On August 1, 2005, Dr. Loraine Glaser performed a consultative physical examination of Plaintiff. Tr. 763. Dr. Glaser's report indicates that Plaintiff ambulated with a normal gate and that she was comfortable in the both the sitting and standing positions. Tr. 764. Plaintiff's cervical spine allowed about 50 degrees of flexion, 80 degrees of rotation bilaterally, and 45 degrees of lateral flexion bilaterally. These results

were within normal limits.  Plaintiff was able to bend forward at the waist 90 degrees.  She refused to attempt to squat. Plaintiff could stand on either leg without difficulty.  She was unsteady and ataxic[1] when attempting to walk heel-to-toe.  Tr. 764.

Plaintiff had no paravertebral muscle spasm.  Straight leg raise was normal to 90 degrees.  Abduction of the hip was normal to 40 degrees bilaterally with adduction normal to 20 degrees bilaterally.  External rotation of the hips was normal to 50 degrees bilaterally; internal rotation was normal to 40 degrees bilaterally.  Tr. 765.

Flexion of the knees was normal to 150 degrees bilaterally with extension normal to 0 degrees bilaterally. Plaintiff had crepitus[2] bilaterally with passive range of motion,

---

[1]    "Ataxic," "ataxia," or "atactic," refers to lack of coordination or failure of muscle coordination. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (31st ed. 2007), at 172.

[2]    "Crepitus," or "crepitation," is "the grating sensation caused by the rubbing together of the dry synovial surfaces of joints[.]" DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (31st ed. 2007), at 437.

but no evidence of heat, erythema,[3] effusion,[4] ligamentous laxity[5] or tenderness to palpation over the knee joints. There was no significant side-to-side variation in laxity. Medial and lateral stress testing showed no joint line opening. There were bony hypertrophic[6] changes bilaterally (right more than left). Plantar flexion of the ankles was normal to 40 degrees bilaterally and dorsal flexion was normal to 20 degrees bilaterally. There was no pedal edema. Dorsalis pedis was 3+ bilaterally. Tr. 765.

Dr. Glaser found that Plaintiff can ambulate normally and can bend forward without difficulty. Although Plaintiff was off-balance while attempting to walk heel-to-toe, Dr. Glaser concluded that this was related to cerebellar ataxia related to chronic alcohol abuse. Tr. 766. In other words, Plaintiff's inability to walk heel-to-toe was not related to or caused by the

---

[3]     "Erythema" is "redness of the skin produced by congestion of the capillaries." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (31st ed. 2007), at 650.

[4]     "Effusion" is "the escape of fluid into a part or tissue." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (31st ed. 2007), at 603.

[5]     "Ligamentous laxity" refers to slackness or looseness with regard to the ligaments. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (31st ed. 2007), at 1026.

[6]     "Hypertrophic," or "hypertrophy," is "the enlargement of an organ or part due to an increase in size of its constituent cells." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (31st ed. 2007), at 910.

problems with her knees.  Dr. Glaser did state that Plaintiff

showed "evidence of degenerative joint changes in both knees with

crepitus and bony hypertrophic changes."  Id.  Dr. Glaser stated

that "weight reduction would diminish her complaints."  Id.

> Dr. Glaser concluded that:
>
> [T]he patient appears capable of performing a moderate
> amount of sitting, ambulating, standing, bending,
> kneeling, pushing, pulling, lifting, and carrying heavy
> objects.  In addition, the patient has no difficulty
> reaching, grasping, and handling objects.  There are no
> visual and/or communication limitations nor are there
> environmental limitations.  The patient also appears
> capable of performing sedentary work activities
> commensurate with her age.

Tr. 766 (emphasis added).

In conjunction with her written report, Dr. Glaser

completed a form entitled "Medical Source Statement of Ability to

Do Work-Related Activities (Physical)."  Tr. 771.  On this form,

Dr. Glaser indicated that Plaintiff can lift and carry 25 pounds

occasionally and 10 pounds frequently.  These weight restrictions

are consistent with the ability to perform work at the light

level of exertion.  See 20 C.F.R. § 404.1567(b)("Light work

involves lifting no more than 20 pounds at a time with frequent

lifting or carrying of objects weighing up to 10 pounds.").  Dr.

Glaser further indicated that Plaintiff had no walking, standing,

sitting, or pulling limitations.  Tr. 771-72.  Dr. Glaser stated

that Plaintiff could climb and stoop occasionally.  Tr. 772.  In

contrast to her narrative report, however, Dr. Glaser indicated

that Plaintiff can never perform kneeling.  <u>Id.</u>  Dr. Glaser also

indicated that Plaintiff can never perform balancing, crouching,

or crawling.  <u>Id.</u>  In support of these limitations, Dr. Glaser

wrote:

> 1. Pt. refused to attempt to squat on exam; %
> [complains of] pain ć [with] passive ROM [range of
> motion] bilat knees ć [with] presence of crepitus and
> bony hypertrophic ∆'s [changes] L/W [living with] OA
> [osteoarthritis]
>
> 2. Pt ataxic in performing heel→toe ć [with] hx
> [history] heavy ETOH [ethanol] use

<u>Id.</u>

On October 24, 2005, Dr. Casey Prenger completed a form

simply entitled "Questionnaire."  At the December 8, 2005

evidentiary hearing, Plaintiff described Dr. Prenger as her

"current treating doctor" although she had only met Dr. Prenger

for the first time three months previously.  Tr. 847-48.  On the

Questionnaire, Dr. Prenger indicated that Plaintiff complained of

increased knee pain, especially with prolonged standing or

sitting, decreased energy and appetite, and sadness.  Dr. Prenger

found Plaintiff's complaints credible.  Dr. Prenger stated that

Plaintiff can sit 5 hours during an 8 hour day, with a maximum of

1 hour without interruption.  According to Dr. Prenger, Plaintiff

can stand and walk for 3 hours during an 8 hour day, with a

maximum of 30 minutes without interruption.  Dr. Prenger said

that Plaintiff can lift and carry no more than 10 pounds

occasionally, defined as totaling no more than 2.5 hours during

the work day.  Dr. Prenger stated that Plaintiff's symptoms could cause her to miss as much as three days of work per month.  Dr. Prenger then stated that Plaintiff cannot consistently work 40 hours per week, month in and month out. Tr. 781.  In explanation, Dr. Prenger wrote:

> doe [dypsnea on exertion] & inability to stand/sit for prolonged periods – she is unlikely to find a job that can fit for her – She has pain that has thus far not responded to therapy – so she frequently misses work.

Tr. 781.  Finally, Dr. Prenger answered "yes" to the question, "Are your answers based on your patient's history, your clinical examinations and treatment of her, diagnostic tests you may have performed, arranged, reviewed, and on your review of the chart?" Tr. 782.

In her review of the medical evidence, the ALJ gave no weight to at least part of Dr. Glaser's opinion.  Specifically, the ALJ rejected the postural limitations noted by Dr. Glaser, stating:

> The postural limitations of no kneeling and crouching in Dr. Glaser's functional capacity assessment are given no weight as they are unsupported by the clinical findings and observations during her consultative examination.  During that examination, flexion of the knees was normal to 150 degrees bilaterally, with extension normal to 0 degrees bilaterally.  There was crepitus bilaterally (right more than left) with passive range of motion, but no evidence of heat, erythema, effusion, ligamentous laxity or tenderness to palpation over the knee joints.  There was no significant side-to-side variation in laxity.  Medial and lateral stress testing revealed no joint line opening; and there did not appear to be any rotatory instability.  The claimant ambulated with a normal gait

7

and appeared comfortable in both the sitting and
standing positions. She refused to attempt to squat;
however, it was observed that she had no difficulty
changing position or getting on and off the examination
table. <u>With such benign findings, there is no reason
the claimant could not perform occasional kneeling and
crouching as required by both housekeeping jobs</u>.

Tr. 17 (internal citations omitted)(emphasis added).

In answer to counsel's contention that Dr. Glaser's FCE
was inaccurate as to Plaintiff's ability to stand or walk because
she did not have Plaintiff's X-rays, the ALJ stated:

Dr. Glaser indicated no limitations on
standing/walking; however, this obviously assumes
normal breaks throughout the workday. Dr. Glaser did
not dispute that the claimant has degenerative joint
disease; and she did observe bony hypertrophic changes
bilaterally, more on the right. The fact that she did
not have access to the claimant's recent X-ray reports
is not a crucial factor that negates her assessment.
On the contrary, it means that the radiologist's
characterization of "severe" arthrosis was not allowed
to overshadow what were essentially unremarkable
clinical findings, as noted above. The only positive
finding with regard to the claimant's knees was
crepitus with passive range of motion. Otherwise,
there was no swelling, no evidence of laxity or
instability, and normal range of motion.

Tr. 18 (internal citations omitted).

The ALJ then discussed Dr. Glaser's opinion in the
context of Plaintiff's obesity and its effect on her knees:

As for obesity, Dr. Glaser made a diagnosis of
exogenous obesity[7] (she says the claimant was 5' 10"
tall and weighed 236 lbs.) and believed it contributed

---

[7] Exogenous obesity is obesity due to excessive food
intake, as opposed to endogenous obesity, which is cause by some
abnormality within the body. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY
(31st ed. 2007), at 1329.

to her symptoms; however, Dr. Glaser appears to be the only physician who has made obesity a diagnosed impairment or even encouraged claimant to lose weight. [The claimant has been advised to lose weight to reduce cholesterol.] There is no reason to believe obesity in combination with her arthritis reduces the claimant's ability to stand/walk below the level necessary for light work. Her weight did not interfere with her ability to do her housekeeping job back in the year 2000. The claimant actually weighed more (237 lbs.) in May 2000, when the first X-rays were taken of her knees. Those X-rays on May 10, 2000 show "severe bilateral anterior and medial compartment osteoarthritis"; however, the claimant continued to work at housekeeping positions for the next year and a half in spite of these findings and in spite of her weight. Furthermore, subsequent medical records never mention any more complaints of knee pain until December 6, 2004. During that examination, there was crepitus in the right knee but no effusion. X-rays taken of both knees on March 31, 2005 and more X-rays of the right were obtained on April 4, 2005. Not unlike the previous X-rays in May 2000, these studies were also read as showing "severe medial and anterior compartment arthrosis." Because there appeared to be osteophytes[8] in the right knee, she was referred to the orthopedic clinic at University Hospital. Examination in the orthopedic clinic on April 4, 2005 revealed minimal crepitus. The claimant could fully extend her knee and there was no ligamentous instability. That treatment note never mentions claimant's weight.

Tr. 18 (internal citations omitted)(brackets in original).

The ALJ then noted Dr. Prenger's opinion and observed that it limited Plaintiff to performing sedentary work. The ALJ recognized that Dr. Prenger's opinion would compel a conclusion

---

[8]     Osteophytes are more commonly known as bone spurs. See http://medical-dictionary.thefreedictionary.com/osteophyte (visited April 15, 2009).

of disability under Medical Vocational Rule 201.04.[9]  The ALJ,
however, gave Dr. Prenger's opinion no weight.  In rejecting Dr.
Prenger's opinion, the ALJ stated:

> Other than merely listing diagnoses, he provides no
> objective rationale for the aforementioned limitations,
> never even mentioning the X-rays or providing clinical
> findings.  Counsel noted Dr. Prenger's statement that
> the claimant has right knee pain "especially with
> prolonged standing or sitting"; however, this must be
> based on her subjective complaints as there is no
> clinical support in the only treatment note signed by
> Dr. Prenger [the assertion that her right knee pain
> limits <u>sitting</u> is never mentioned anywhere in the
> medical record.].  The claimant testified that she had
> first seen this doctor three months before the
> disability hearing and the one office note with Dr.
> Prenger's signature is dated September 14, 2005.  This
> visit was a regular follow-up visit for refill of her
> medications (Atenolol and hydrochlorothiazide for
> hypertension, Zocor to lower cholesterol, and Celexa
> for depression.  There was no physical examination
> performed on her knees.

Tr. 19 (brackets and emphasis in original)(internal citations
omitted).

The ALJ then commented on Dr. Prenger's functional
capacity assessment:

> Dr. Prenger states in his functional assessment that
> the claimant "has pain that has thus far not responded
> to therapy."  This is not reflected in the medical
> record.  There is no indication that she has ever had
> physical therapy for her knees and no arthroscopic
> surgery has been performed or recommended.  In May 2000
> (when complaints of knee pain were first documented),
> she was prescribed Ibuprofen and Capsaicin cream.  She
> apparently got relief as there are no documented knee

_____

[9]     Rule 201.04 requires a finding of disability when the
claimant is of advance aged, has a high school education, and
whose previous work experience is unskilled.

complaints for years thereafter and she was working in spite of any knee problems. She refused cortisone injections and anti-inflammatory medications offered by the orthopedic clinic in April 2005. [That treatment note suggests that she refused NSAIDS[10] because she experienced allergic reactions to other medications. The claimant did have allergic reactions to her seizure medication, Dilantin; however, she was given Naprosyn in January 2002 for a severe headache and it resolved her discomfort with no apparent side effects.] The claimant was using only Tylenol for pain when seen in the orthopedic clinic in April 2005, and she was not on any prescription pain medication when Dr. Glaser examined her in August 2005. She still uses only Extra Strength Tylenol for knee pain. It must be effective controlling it because Dr. Prenger advised her to "continue Tylenol" in September 2005, and the clinic physician who previously saw her in July 2005 characterized the knee pain as "stable on Tylenol regimen." This is not a record which shows surgery, bracing, injections, evaluations by numerous specialists, pain management with strong pain medications, physical therapy, TENS units, ambulatory aids and other forms of treatment often seen is cases of severe orthopedic impairment.

Tr. 19.

Finally, the ALJ found that Plaintiff's subjective complaints of pain were not credible. First, the ALJ commented that Plaintiff's overall credibility was "seriously eroded" because of her denials of alcohol and drug abuse when the record showed significant use of alcohol and a positive urine screen for marijuana. The ALJ again commented on the lack of clinical findings which supported Plaintiff's claim of disabling pain. The ALJ also noted that Plaintiff's complaints of severe pain

_____

[10]    Non-steroidal anti-flammatory drugs. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY (31st ed. 2007), at 1312.

were contradicted by the apparent effectiveness of over-the-counter medication. The ALJ also noted that Plaintiff's activities of daily living - such as going to church, helping with household chores, and babysitting her grandson - did not suggest disabling pain. The ALJ recognized the diagnosis of osteoarthritis but concluded that it did not appear to be any worse at the time of the hearing than it was in May 2000, when Plaintiff quit working. The ALJ also noted the recent finding of bone spurs, but commented that arthroscopic debridement had not been recommended or performed. The ALJ found that crepitus alone was insufficient to warrant restrictions on sitting or standing beyond what normal work breaks provide, especially in light of the absence of the need for more aggressive treatment or medication to control her pain. Tr. 20.

The ALJ, therefore, concluded that Plaintiff has the RFC to perform light work, except that she should not be required to use foot controls frequently or work around unprotected heights or dangerous machinery. The ALJ also found that she should be limited to simple, routine, repetitive work because of her mental impairments. The ALJ then noted that, according to the vocational expert, Plaintiff's previous housekeeping job in the hotel was classified as light and unskilled. The ALJ also noted that, although Plaintiff's private residence housekeeping job is classified as medium work, she actually performed it at

the light level because she was only required to lift and carry

15 pounds.  Based on these findings, the ALJ concluded that

Plaintiff is not disabled under the Social Security regulations

because she has the RFC to perform her past relevant work.  Tr.

20-21.

On September 21, 2007, the Appeals Council denied

Plaintiff's request for review of the ALJ's decision, making the

ALJ's decision the final decision of the Commissioner.

Plaintiff filed a complaint for review of the ALJ's

decision pursuant to 42 U.S.C. § 405(g) with this Court on

November 15, 2007.  Doc. No. 3.  In her Statement of Errors (Doc.

No. 6), Plaintiff alleged that the ALJ failed to explain how she

developed Plaintiff's RFC and that she erred in the weight she

assigned to the opinions of Drs. Glaser and Prenger.  Plaintiff

also alleged that the ALJ erred in assessing her subjective

complaints of pain.  Finally, Plaintiff alleged that the ALJ made

a vocational error in her hypothetical to the vocational expert

because she failed to include Dr. Glaser's limitations of no

balancing, kneeling, crouching, and crawling.

Magistrate Judge Black issued his Report and

Recommendation on February 27, 2009 and concluded that the ALJ's

decision was not supported by substantial evidence.  Judge Black

found that the ALJ erred in assigning no weight to Dr. Glaser's

opinion that Plaintiff cannot kneel, crawl, or crouch.  In Judge

Black's view, the ALJ impermissibly acted as her own medical expert by concluding that the "benign" findings on examination by Dr. Glaser would not preclude occasional kneeling and crouching. Judge Black also concluded that Dr. Prenger was a treating physician whose opinion was entitled to controlling weight. Judge Black found that the ALJ impermissibly "played doctor" in rejecting Dr. Prenger's opinion based on the treatment the ALJ believed Plaintiff should have undergone for her knees. Finally, Magistrate Judge Black concluded that the ALJ's hypothetical to the vocational expert was improper because it failed to include Dr. Glaser's limitation that Plaintiff can never crouch, kneel or crawl. Accordingly, in light of his analysis, Judge Black recommended that the ALJ's decision be reversed and the case remanded pursuant to sentence four of 42 U.S.C. § 405(g) so that: 1) an additional consultative examination of Plaintiff can be obtained; 2) the ALJ can re-evaluate the weight to be given to the opinions of Drs. Glaser and Prenger; and 3) further vocational expert testimony can be obtained based on an accurate portrayal of Plaintiff's limitations.

The Commissioner filed timely objections to Judge Black's Report and Recommendation (Doc. No. 12) and Plaintiff has filed a response to the objections (Doc. No. 13). Accordingly, the case is ready for disposition by the Court.

## II. Standard of Review

The relevant statute provides the standard of review to be applied by this Court in reviewing decisions by the ALJ. <u>See</u> 42 U.S.C. § 405(g). The Court is to determine only whether the record as a whole contains substantial evidence to support the ALJ's decision. "Substantial evidence means more than a mere scintilla of evidence, such as evidence as a reasonable mind might accept as adequate to support a conclusion." <u>LeMaster v. Secretary of Health & Human Serv.</u>, 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted). The evidence must do more than create a suspicion of the existence of the fact to be established. <u>Id.</u> Rather, the evidence must be enough to withstand, if it were a trial to a jury, a motion for a directed verdict when the conclusion sought to be drawn from it is one of fact for the jury. <u>Id.</u> If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence. <u>Elkins v. Secretary of Health & Human Serv.</u>, 658 F.2d 437, 439 (6th Cir. 1981). The district court reviews <u>de novo</u> a magistrate judge's report and recommendation regarding social security benefits claims. <u>Ivy v. Secretary of Health & Human Serv.</u>, 976 F.2d 288, 289-90 (6th Cir. 1992).

III. <u>Analysis</u>

In his objections, the Commissioner argues that the ALJ considered and appropriately weighed the opinions of Drs. Glaser

and Prenger.  Regarding Dr. Glaser's opinion, the Commissioner points out that it was internally inconsistent given that she stated that Plaintiff can do a moderate amount of sitting, standing, kneeling, and carrying while at the same time indicating that Plaintiff can never kneel, crouch or crawl.  The Commissioner also argues that Dr. Glaser's opinion that Plaintiff can never kneel, crawl or crouch is inconsistent with her own findings on examination.  Therefore, the Commissioner argues that the ALJ was not required to give significant weight to Dr. Glaser's opinion.  The Commissioner also argues that Magistrate Judge Black failed to consider his argument that Dr. Prenger was not a treating physician under the Social Security regulations and that, therefore, the ALJ was not required to give her opinion controlling weight.  In support of this argument, the Commissioner points out that Dr. Prenger had been treating Plaintiff for only a short time before the evidentiary hearing and that she apparently had only seen Plaintiff at most on two occasions.  Finally, the Commissioner takes exception to Magistrate Judge Black's conclusion that the ALJ "played doctor" by substituting her opinion for those of the medical experts.  Rather, the Commissioner argues, the ALJ was simply considering Plaintiff's course of treatment as she was required to do under the regulations.  Upon review, the Court is persuaded that the ALJ's decision was supported by substantial evidence.

As an initial matter, the Court concludes that Dr.
Prenger's opinion was not entitled to controlling weight as that
of a treating physician.  Under the treating physician rule,
opinions of physicians who have treated the claimant receive
controlling weight if they are "well-supported by medically
acceptable clinical and laboratory diagnostic techniques" and
"not inconsistent with the other substantial evidence in [the]
case record."  20 C.F.R. § 404.1527(d)(2).  If the ALJ finds that
either of these criteria have not been satisfied, she is required
to apply the following factors in determining how much weight to
give a treating physician's opinion: "the length of the treatment
relationship and the frequency of examination, the nature and
extent of the treatment relationship, supportability of the
opinion, consistency of the opinion with the record as a whole,
and the specialization of the treating source."  Wilson v.
Commissioner of Social Sec., 378 F.3d 541, 544 (6th Cir. 2004).
The fact that Plaintiff referred to Dr. Prenger as her "treating
physician" is not dispositive of the weight to be accorded her
opinion.  A single visit to a doctor is insufficient to establish
a treating physician relationship and, indeed, depending on the
circumstances, sometimes three to five visits will be
insufficient.  See Luteyn v. Commissioner of Social Sec., 528 F.
Supp.2d 739, 743 (W.D.Mich. 2007)(citing cases).

As the Commissioner accurately points out, the record establishes that Plaintiff was seen by Dr. Prenger at most two times, and more likely only once since there is only one office note signed by Dr. Prenger.  See Tr. 784.  In any event, it is clear that Dr. Prenger's treating relationship with Plaintiff was so limited that she could not have provided the "detailed, longitudinal picture of [Plaintiff's] medical impairments" that is the rationale for the treating physician rule.  20 C.F.R. § 404.1527(d)(2); see also Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994)("The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records.").

Moreover, Dr. Prenger's opinion would not be entitled to controlling weight, even if she were considered a treating physician, because the record does not show it was based on "medically acceptable clinical and laboratory diagnostic techniques."  Although Dr. Prenger checked a box on the Questionnaire stating that her opinion was based on the "patient's history, your clinical examinations and treatment of her, diagnostic tests you may have performed, arranged, reviewed, and on your review of the chart," there is no indication in the

record which tests she performed, which examinations she relied on, or what medical records she reviewed in reaching her opinion. The ALJ was not required to accept this conclusory opinion.

The Court further concludes that the ALJ did not err in the weight she assigned to Dr. Glaser's opinion. As the Commissioner correctly argues, the narrative portion of Dr. Glaser's report is at odds with her completion of the RFC form. As stated, in her narrative Dr. Glaser reported that Plaintiff can do a moderate amount of kneeling whereas the RFC indicates that she can never kneel, crouch, or crawl. Moreover, the limitations in the RFC form are contradicted by Dr. Glaser's physical examination of Plaintiff which shows that her range of motion and ability to bend and rotate are all completely normal. Plaintiff refused to perform for Dr. Glaser the one test that would have confirmed or dispelled her ability to kneel or crouch. Thus, there is no objective evidence in the record that Plaintiff is not able to kneel, crawl, or crouch. This lack of evidence falls on Plaintiff, however, since it is her burden to establish that she can no longer perform her past relevant work. Jones v. Commissioner of Social Sec., 336 F.3d 469, 474 (6th Cir. 2003). On the other hand, Dr. Glaser's narrative report shows that Plaintiff retains some agility, as indicated by her normal gait and her ability to get on and off the examination table without difficulty. Dr. Glaser attributed Plaintiff's inability to walk

heel-to-toe to her alcohol abuse and not to osteoarthritis in her knees. Therefore, although perhaps the ALJ could have phrased it differently, she was accurate in concluding that there was nothing in Dr. Glaser's written report which precludes occasional kneeling and crouching by Plaintiff. Consequently, the ALJ was not required to include this limitation in her hypothetical to the ALJ.

The Court disagrees with both Plaintiff and Magistrate Judge Black that the ALJ impermissibly substituted her medical opinion for the opinions of the medical experts. E.g. <u>Miller v. Commissioner of Social Sec.</u>, No. 1:07-CV-759, 2008 WL 4445189, at *3 (S.D. Ohio Sept. 29, 2008) ("As this Court has previously recognized, the ALJ may not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record.")(internal brackets and quotation marks omitted). For example, Judge Black interpreted the ALJ's comments that Plaintiff had not undergone physical therapy and/or arthroscopic surgery as commentary on what she believed should have been the proper course of treatment. Upon reading the decision, however, the Court is persuaded that the rather than injecting her own opinions into the record, the ALJ was simply recognizing that the lack of need for a more aggressive or invasive course of treatment for Plaintiff's osteoarthritis is an indication that the impairment is not as severe as claimed. The

20

ALJ engaged in a similar analysis when she noted that Plaintiff's pain seemed to be well-controlled by over-the-counter medications. This was a permissible interpretation of the record by the ALJ. E.g. Myatt v. Commissioner of Social Sec., 251 Fed. Appx. 332, 335 (6th Cir. 2007)("Dr. Kleykamp's modest treatment regimen for Myatt is inconsistent with a diagnosis of total disability. Although Myatt challenges this characterization, he admits he has never been hospitalized for mental or physical problems, never needed surgery, never been referred for orthopedic or neurological evaluation, and never received in-patient mental health counseling.").

Finally, there was ample evidence for the ALJ to reject Plaintiff's subjective complaints of pain. As she accurately reported, Plaintiff was inconsistent and indeed untruthful about the extent of her alcohol abuse and marijuana use. Although Plaintiff's X-rays indicate severe osteoarthritis, the ALJ pointed out in her decision that Plaintiff was able to work for a year and half with this condition and there is no evidence in the record that the condition has worsened over time. Tr. 20. Plaintiff certainly has not directed the Court to any evidence of a worsening condition. Additionally, as the ALJ also accurately found, Plaintiff's complaints of disabling pain are refuted by the effective use of over-the-counter medication to control the pain. Plaintiff was issued a cane shortly before the evidentiary

hearing.  As the ALJ again accurately wrote in her decision, there is no indication that use of the cane is mandatory. Moreover, Plaintiff's need for a cane is contradicted by Dr. Glaser's finding that she is able to ambulate normally.

Finally, contrary to Plaintiff's response to the Commissioner's objections, Dr. Glaser did not limit Plaintiff to performing sedentary work.  As stated earlier, the weight limitations indicated in Dr. Glaser's report are consistent with the ability to perform light work.  Dr. Glaser stated that Plaintiff can <u>also</u> do sedentary work commensurate with her age. Use of the word "also" indicates that Dr. Glaser was not limiting Plaintiff to sedentary work; rather Dr. Glaser was indicating that Plaintiff can do sedentary work in addition to light work. This statement is consistent with the regulation which states that a person who can do light work is generally presumed capable of doing sedentary work.  <u>See</u> 20 C.F.R. § 404.1567(b)("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

In short, the ALJ's decision was clearly supported by substantial evidence.  Accordingly, the Commissioner's objections to Magistrate Judge Black's Report and Recommendation are well-taken and are **SUSTAINED.**  The Court does not adopt the Report and

Recommendation. The decision of the ALJ determining that Plaintiff is not disabled under the Social Security regulations is **AFFIRMED.**

**IT IS SO ORDERED**

Date <u>April 16, 2009</u>                    <u>          s/Sandra S. Beckwith          </u>
                                             Sandra S. Beckwith
                                  Senior United States District Judge